## WOLF & CLARK *v.* A. J. LOWRY, et al.

The right of a wife to a separation of property is not limited to the cases mentioned in Art. 2399 C. C.

If there be such derangement of the husband's affairs, or if his habits and circumstances be such as to render a separation necessary to preserve the acquisitions of the wife for the use of her family, a separation will be decreed.

The failure of the purchaser of lands sold to satisfy existing mortgage debts, to record the sheriff's deed, will not authorize a mortgagee to whom nothing was due out of the price of the adjudication to treat the sale as null, according to the provisions of the Act of 13th of March, 1813.

Under no circumstances would the subsequent mortgagee be entitled to have the lands resold, without reimbursing the price of the former sale, which had been applied to prior incumbrances.

APPEAL from the District Court of the parish of Madison, *Snyder*, J.
*R. C. Stockton* and *A. T. Steel*, for plaintiff and appellant. *J. J. Amonett*, for defendants and appellees.

OGDEN, J. This is an hypothecary action by which the plaintiffs seek to subject certain property in the possession of the defendants, to a judicial mortgage in their favor, resulting from a judgment which they obtained in 1841, against *Oliver B. Cobb.*

The plaintiffs' judgment was duly recorded, so as to operate a judicial mortgage on the real estate owned by *Cobb*, and at the time of the registry he was the owner of the property in controversy, now sought to be subjected to the payment of the judgment. There was, however, at that time prior mortgages existing on the property to a very large amount. Under those prior mortgages the plantation and negroes were seized by the Sheriff, and on the 24th of August, 1841, the whole property, by two different adjudications, was sold by the sheriff to Mrs. *S. M. C. Cobb*, the wife of *Oliver Cobb*. The property did not bring enough to satisfy the judgment of the seizing creditors. The sheriff on the 27th of August, 1841, executed two deeds of sale to Mrs. *Cobb*, of the property which had been adjudicated to her, but these deeds were not recorded until the 14th of January, 1847. *Oliver B. Cobb* was declared a bankrupt by a decree rendered on the 16th January, 1843, in the United States Circuit Court for the District of Louisiana, and on the 12th of May, 1843, he obtained a certificate of discharge from all debts owing by him at the time of presenting his petition.

The defendants pleaded several peremptory exceptions, based upon the proceedings in the bankruptcy of *Cobb*, which need not to be stated, as the case will be disposed of by a decision on the points presented by the defence to the merits. The first question is whether the legal title to the property vested in Mrs. *Cobb*, by the adjudications made to her previous to the bankruptcy of her husband. In 1841, she obtained a judgment against her husband, decreeing that her property should be separated from his. It is contended that this judgment was not in accordance with the prayer of Mrs. *Cobb's* petition, which simply demanded the restitution of her paraphernal property, and that the judgment was not, in fact, a judgment of separation of property, by which the community could be dissolved. We are not at liberty to go behind the judgment which was rendered by a Court of competent jurisdiction, and which is not impeached on the ground of fraud or colluson. The objection that Mrs. *Cobb* was not the creditor of her husband, and had no dotal property which was in danger from the embarrassment of his affairs, and had therefore no right to a separation of property, cannot be sustained under the jurisprudence, as settled by our predecessors. In *Davoc* v. *Darcey*, 6 Rob. 342, it was held that the right of the wife to a separation of property was not limited to the cases mentioned in Art. 2399 of the Code, and that she might obtain a separation of property, when the habits and circumstances of her husband rendered it necessary to preserve for her family, the earnings from her industry or talents. The same question was afterwards decided in the case of *Penn* v. *Crockett & Garland*, 7 An. 343, where the right of the wife, which had been made the basis of an action of separation of property, was the value of a slave which had been given to the wife during the marriage, and had been alienated by the husband. The Court reaffirmed the former decision, and held that in case of this derangement of the husband's affairs, this was sufficient to authorize a judgment of separation of property in favor of the wife. After these repeated decisions, we must consider the law as settled, the question being one of the construction of statutory laws, involving no fundamental principles. The only other question to be determined on the merits, is whether the judicial mortgage of the plaintiffs can now be enforced on the property in consequence of the failure to record the sheriff's deeds to Mrs. *Cobb* until the year 1847. On the 24th of August, 1841, the second writ under which the sheriff had seized and sold her property, was re-

turned as satisfied. Mrs. *Cobb* went into possession, and in 1843 sold an undivided half of the property to the defendant, *Lowry*. The other defendants acquired title subsequently by sale under execution against Mrs. *Cobb*, and by a transfer from *Lowry* of his interest. The plaintiffs having caused their judgment to be reinscribed before the expiration of 10 years, now claim the right to have the property sold to satisfy their judgment, disregarding the former sheriff's sale, and the effect it was supposed to have had of extinguishing the plaintiff's mortgage. This, it is contended, must necessarily be the consequences of the failure to record the sheriff's deeds in conformity with the Act of the Legislature of the 12th of March, 1813. This act declares that all sales of lands or slaves made by any Sheriff or other officer by virtue of any execution shall be recorded as to land, in the parish where the land shall be situated, and as to slaves, where the owner has his domicil, and further provides that sales "which shall not be recorded agreeably to the provisions of the act shall be utterly null and void to all intents and purposes, except between the parties thereto." There are other provisions of the law to be considered in deciding upon the rights of the parties before us. Art. 685 of the Code of Practice, declares "If the seizing creditor be a vendor or has any privilege or special mortgage on the property seized and offered for sale which is anterior or entitled to a preference over other privileges or special mortgages existing on said property, he may require that the property be sold at any price to pay him, although the purchase money be not sufficient to satisfy all the privileges or mortgages with which the property is burthened." Art. 690. "The adjudication itself, has the effect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have to the thing adjudged." Art. 708. "The purchaser is bound for nothing beyond the price of his adjudication, and if after paying the said creditor as directed in the preceding article, there remains nothing more due, to discharge mortgages subsequent to that of the seizing creditor, the Sheriff shall give him a release from these mortgages."

There was nothing left from the price of the adjudication to Mr. *Cobb*, to discharge any portion of the plaintiffs judicial mortgage, and it was the duty of the Sheriff to have given a release to the purchaser from that mortgage. The price paid by Mrs. *Cobb* was applied to the extinguishment of the mortgages having priority over that of the plaintiffs. She was equitably subrogated to the rights of the antecedent mortgages under whose executions the property was sold, and had a right to avail herself of any legal or equitable defence, by which, these creditors, if they had become the purchasers of the property themselves, might have opposed the present action. *Judice* v. *Ker*, 8th An. 465. The plaintiffs were not injured by the failure to record the Sheriff's deeds at the time the sales were made. They did not commence any proceedings to enforce their mortgage until after the deeds were placed on record. They then had notice that the property had been sold to satisfy the mortgages existing on it which had precedence over their own—it is true these prior mortgages were then cancelled, but they were cancelled by reason of the Sheriff's sale of the property, made for the very purpose of satisfying these mortgages, and the sale could not under these circumstances have produced the effect of extinguishing the prior mortgages, without at the same time extinguishing the subsequent ones—Mrs. *Cobb* or those claiming under her, might at any time after the deed was put on record, have required the Sheriff to give the release of subsequent

mortgages as provided in Art. 708, of Code of Practice. The plaintiff had acquired no intermediate rights to be affected by the failure to record the Sheriff's deeds. Whatever rights they had, existed anterior to the Sheriff's sale, and no objections being made to the fairness and regularity of that sale, the plaintiffs, as junior mortgagees, could have had nothing to oppose to the effect which the law declared should be given to it, of releasing the subsequent mortgagees in case there was nothing left from the price of the adjudication for their discharge.

The plaintiffs would not under any view that can be taken of their rights be entitled to have the property sold, to satisfy their mortgage without reimbursing the purchase money on the former sale, which has been applied to the extinguishment of the mortgages which stood before them, and no such offer has been made. See cases of *Sewell* v. *Payne & Harrison*, 5th An. 255, and *Coiron* v. *Millaudon*, 3d An. 664.

We are therefore of opinion that a legal and equitable defence has been made out against the plaintiff's action.

It is therefore decreed that the judgment of the Court below be affirmed with costs.