**The FIRST NATIONAL BANK OF SHREVEPORT as Executor of the Estate of Lillian B. Fain**

v.

**The UNITED STATES of America.**
Civ. A. No. 8611.

United States District Court
W. D. Louisiana,
Shreveport Division.

Dec. 27, 1963.

W. Scott Wilkinson, Wilkinson, Lewis, Woods & Carmody, Shreveport, La., Rabkin & Johnson, New York City, for plaintiff.

Edward L. Shaheen, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., Louis F. Oberdorfer, Asst. Atty. Gen., Department of Justice, Washington, D. C., Edward S. Smith, Myron C. Baum, Stanley F. Krysa, and Jerome J. Reso, Jr., Attorneys, Department of Justice, Washington, D. C., for the Government.

BEN C. DAWKINS, Jr., Chief Judge.

The executor of the Estate of Lillian B. Fain brings this action for recovery of federal estate taxes in the amount of $195,963.19, plus interest, alleged by plaintiff to have been illegally assessed and collected.

The controversy stems from the Commissioner's inclusion in decedent's estate of the corpus of the Lillian B. Glassell Trust, valued at $919,227.47. Plaintiff contends that, although decedent was nominally the settlor of the trust, decedent did not have a transferable interest in the principal, nor make a voluntary transfer, nor retain a life interest; and therefore Section 2036, Internal Revenue Code of 1954 (26 U.S. C. § 2036),[1] was erroneously applied by defendant when it included the trust corpus in decedent's estate.

---

1. Section 2036(a) at that time provided: "(a) *General Rule.*—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which

There is no question but that all parties involved in the creation of the trust acted in good faith and that the purpose was not primarily one of tax avoidance. An understanding of the background facts leading up to its establishment is essential in order to determine whether the corpus, for tax purposes, should have been included in the estate of the decedent.

During her lifetime, the decedent was married three times, her second husband being Alfred C. Glassell. The controversy involved here centers around the property settlement executed upon decedent's judicial separation from Mr. Glassell. The evidence shows without dispute that both parties wanted a separation and divorce, and that the husband had legal grounds for a separation because of decedent's intemperance; but they agreed that Mrs. Glassell would sue for the separation and divorce after he purposely abandoned the family home. He would not agree to the separation, however, until a firm understanding was reached concerning distribution of the community property.

A prominent, highly respected attorney and family friend represented decedent's interests in negotiations for a property settlement. He informed her of his belief that the value of her one-half interest in the community property was substantially more than the value of the proposed settlement. But, considering all of the circumstances and the desirability of avoiding notoriety and animosities created by litigation, he recommended that she accept the settlement.

He informed her that under the proposed agreement she would receive the family house, certain royalties, cash and bonds, and "Alfred will pay to Lillian One million dollars, * * * subject, however, to the conditions set forth in the following paragraph." The following paragraph provided, in part: "The One million Dollar payment made by Alfred to Lillian will be placed by Lillian in trust * * *," which was to be irrevocable, the income to be paid to Lillian during her life, and the remainder to go to her three children, one of whom was by a former marriage, and to Mr. Glassell's son by a former marriage. Mr. Glassell's daughter by an earlier marriage was not included as a beneficiary although he had wanted her included.

Although decedent signed the trust instrument as settlor, Mr. Glassell actually made physical delivery of bonds and cash to the trustee, The First National Bank of Shreveport. On March 25, 1949, decedent filed a gift tax return disclosing her creation of the trust and transfer by her of the remainder interest valued at $460,020.00. She paid a gift tax thereon of $112,454.90.

Plaintiff's position is that Mrs. Glassell did not transfer her property to the trust and retain a life interest, but that, considering the transaction as a whole, she transferred her community property interest to Mr. Glassell in order to obtain or acquire a life interest in one million dollars, plus a limited power of appointment to name the remaindermen. It is argued that she *obtained*, not *retained*, a life estate, and therefore I.R.C. § 2036 is not applicable. Disposition of the remainder, it is argued, was predetermined and the remainder never existed as a property right which she could give away.

Plaintiff places strong reliance upon Reed's Estate v. Commissioner, 171 F.2d

the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or
"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

685 (8th Cir.1948).[2] Reed merely stands for the proposition that property received by a widow in compromise of a will contest, and placed in trust by her as a part of the settlement, was received from the deceased husband's estate, not actually transferred by the widow to the trustees.[3] There the testator, by his will, had devised the dower right to a life estate of one-third of his property to his widow and the remainder to his children. The widow had claimed one-third of his estate in full ownership, under a state law subsequently found to be unconstitutional. The Court held that, upon the widow's death, the corpus of the trust should not be included in her estate for tax purposes.

In the instant case can it be said that the principal beneficiaries of the Lillian B. Glassell Trust actually received their remainder interest from Mr. Glassell or from the decedent?

■■■ In determining who owned the property transferred to the trust, Lou-

isiana law admittedly controls. Plaintiff urges that decedent received only a right to income for life and a power of appointment. But powers of appointment are alien to the civil law traditions of Louisiana.[4] The present Louisiana Trust Estates Act contains no provision allowing their use,[5] and apparently the proposed draft revision being prepared by the Louisiana State Law Institute also will exclude the use of powers of appointment in Louisiana trusts.[6]

As noted, the gist of plaintiff's contention is that decedent received two interests, a life estate and a limited power of appointment, and that this power of appointment had to be exercised as previously agreed in order for her to receive a life estate. But, as shown, this is an attempt to apply legal concepts foreign to Louisiana. If the parties had desired a settlement giving decedent merely the income from a million dollars and the remainder to certain children, there were several accepted methods of accomplishing this under Louisiana law which could

2. In the Reed case, the widow claimed one-third of her deceased husband's estate in full ownership under a new state statute, but the children contended the statute was unconstitutional and the widow was entitled merely to the income from a third of the estate. They compromised and the widow agreed to take $100,000.00 in full ownership and to place the balance of the claimed one-third in trust taking only the right to income therefrom. The County Court order purported to give her one-third of the property, but in accordance with the prior agreement she executed the trust as a settlor. Subsequent state court cases established that the statute relied upon by the widow was unconstitutional.

Upon the widow's death the Tax Court upheld an assessment of estate taxes upon one-third of the corpus of the trust as property which she had transferred and in which she had retained an interest for life. The Eighth Circuit held, however, that she had made no transfer to the trust. In considerable detail, the Court pointed out that her claim to full ownership was invalid according to state law and that in fact all she was entitled to was a dower right to income from one-third of her late husband's estate. The heirs did not give her full owner-

ship of one-third, and the law did not vest her with ownership. She was only a conduit for creation of the trust and never became an owner of one-third of the estate.

3. See also Commissioner v. Vease's Estate, 314 F.2d 79 (9 Cir., 1963). In Vease the heirs of a decedent agreed to take all steps necessary to carry out the desires of the deceased as expressed in an unexecuted will, although a valid will of earlier origin existed. In assessing estate tax upon the subsequent death of one of the heirs, the Court stated: "The resulting agreement was nothing more than a voluntary rearrangement of property interests acquired under an admittedly valid will, concluded without duress of unsatisfied claims. Under these circumstances the transfer to the trusts must be deemed to have been made from property each had received from the estate."

4. LSA–Civil Code Art. 1573; Oppenheim, Why a Revision of the Louisiana Trust Estates Act Is Necessary, 18 Louisiana Law Review 599, 602–603.

5. LSA–R.S. 9:1791 et seq.

6. Oppenheim, A New Trust Code for Louisiana: Some Basic Policy Considerations, 23 Louisiana Law Review 621.

have been utilized.[7]   However, the parties did not consider such a settlement, nor did they even discuss life estates and powers of appointment.

 To our mind, the only reasonable inference to be drawn from the testimony, the instrument creating the trust, the gift tax return, and the other evidence is that decedent actually received full ownership of the one million dollars in settlement of her share of the community property, but that she agreed to place it in trust in order to relieve her from the task of administering it, and to guarantee her a tax-free income of at least $2000.00 per month.   During the marriage and upon entry of the decree of separation decedent owned one-half of the community property in indivision with her husband.[8]   Even full ownership of one million dollars, the house and other property received by her amounted to substantially less than her share of the property.   There is no evidence that she wanted a separation any more than Mr. Glassell, or wished to avoid litigation any more than he.

Upon the facts presented, the only conclusion consistent with principles of Louisiana law is that decedent, when she created the trust, held full ownership of the one million dollars and other properties.   Paraphrasing the Court's decision in Vease,[9] decedent entered into a voluntary agreement settling her right to one-half of the community property.   She received one million dollars and placed it in trust in accordance with her prior agreement.   Under these circumstances, the transfer to the trust must be deemed to have been made from property she received as her share of the community of acquets and gains existing between herself and Mr. Glassell.   She designated

principal beneficiaries and retained the income from the trust for life.

We find that the Commissioner correctly determined that the trust corpus should be included in the estate of decedent under authority of I.R.C. § 2036.

The action, therefore, must be dismissed with costs assessed against the plaintiff.

---

7. E.g., Mr. Glassell could have placed the money in trust naming Mrs. Glassell as income beneficiary and their children as principal beneficiaries.   Of course, then Mr. Glassell would have had to pay the gift tax on the gift to the children.   Another, perhaps less desirable method, would have been to give decedent the usufruct and the children the naked ownership of the million dollars.

8. LSA–Civil Code Art. 2399 et seq.; Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252 (1930); Phillips v. Phillips, 160 La. 813, 107 So. 584 (1926).

